**LYNCH CARPENTER, LLP**
Todd D. Carpenter (234464)
todd@lcllp.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:   619-762-1910
Fax:   619-756-6991

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACADEMY SWIM CLUB, INC., on behalf of itself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SENTINEL INSURANCE COMPANY, LIMITED,<br><br>　　　　Defendant. | Case No.: 5:21-cv-1757<br><br>**CLASS ACTION COMPLAINT**<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff, Academy Swim Club, Inc. ("Plaintiff"), brings this Class Action Complaint, on behalf of itself, and on behalf of all others similarly situated (the "Class"), against Defendant, Sentinel Insurance Company, Limited ("Defendant"), alleging as follows:

## NATURE OF THE CASE

1.　This is a civil class action for declaratory relief and breach of contract arising from Plaintiff's contract of insurance with the Defendant.

2.　At the direction of local, state, and/or federal authorities, and/or due to the COVID-19 public health emergency, Plaintiff had to shut down its indoor pool facility on March 17, 2020, causing an interruption to, and loss of, Plaintiff's business income.

3.　Plaintiff and the Class purchased and paid for an "all-risk" Commercial Insurance Policy from Defendant, which provides, in part, broad property insurance coverage for all non-excluded, lost business income, including the losses asserted herein.

4. Plaintiff submitted timely notice of its claim to Defendant, but Defendant has refused to provide the purchased coverage to its insured, and has denied Plaintiff's claim for benefits under the Policy.

5. Defendant has similarly refused to, or will refuse to, honor its obligations under the "all-risk" policy(ies) purchased by the other members of the putative Class of insureds.

## PARTIES

6. Plaintiff, Academy Swim Club, Inc., is a corporation organized under the laws of the State of California and with its principal place of business in California. Plaintiff operates an indoor swim club located at 28079-28081 Smyth Drive, Valencia, California 91355 (the "Covered Property").

7. Defendant, Sentinel Insurance Company, Limited, is a property and casualty insurance provider with its principal place of business in Connecticut. Defendant is a citizen of Connecticut.

## JURISDICTION

8. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act because Plaintiff (and some members of the Class) and Defendants are citizens of different states, there are more than 100 members of the Class, and the aggregated claims of the putative Class members exceed $5,000,000, exclusive of interest and costs.

9. The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in California. Defendant has, at all relevant times, transacted, solicited, and conducted business in California through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in California.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this district.

# FACTUAL BACKGROUND

### Plaintiff Purchased an "All-Risk" Insurance Policy That Broadly Provides Coverage for Loss of Business Income, Among Other Things

11. Plaintiff purchased a contract of insurance from Defendant, whereby Plaintiff agreed to make payments in the form of premiums to Defendant in exchange for Defendant's promise to indemnify Plaintiff for losses at the Covered Property, including, but not limited to, business income losses.

12. Plaintiff's contract of insurance with Defendants bears Policy Number 84 SBA BT6034 DV (the "Policy") and is effective for the period of June 27, 2019 to June 27, 2020 (the "Policy Term"). Plaintiff's Policy is attached hereto as **Exhibit A**.

13. The Policy provides coverage to Plaintiff's Covered Property.

14. Plaintiff paid all premiums owed to Defendant under its Policy, and Defendant accepted all such premiums from Plaintiff.

15. Plaintiff's Policy is a form policy issued by Defendant.

16. The Policy is an "all-risk" policy, which provides the broadest property insurance coverage available.

17. The Policy provides coverage for "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from any Covered Cause of Loss."

18. The premises as described in the Declarations is the Covered Property, as defined above.

19. The Policy describes "Covered Cause of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is" excluded or limited by the Policy.

20. The Policy does not define the phrase "direct physical loss of or physical damage to."

21. However, the use of the disjunctive "or" in the phrase "direct physical loss of or physical damage to" means that coverage is triggered if <u>either</u> a direct physical loss of

Covered Property or physical damage to Covered Property occurs. The concepts are separate and distinct and cannot be conflated.

22. Physical loss of, or physical damage to, property may be reasonably interpreted to occur when a covered cause of loss threatens or renders property unusable or unsuitable for its intended purpose or unsafe for ordinary human occupancy and/or continued use.

23. The Policy provides Plaintiff with, *inter alia*, various business income and extra expense coverages during the Policy Term.

24. Under the Policy, Defendant agrees to pay for the actual loss of "Business Income" sustained by Plaintiff due to the "necessary suspension of your 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises'. …"

25. The Policy describes the premises as the Covered Property.

26. Additional coverage is provided under the Policy for business income losses resulting from an "order of civil authority" which prohibits access to the Covered Property, related to a "Covered Cause of Loss" at property other than the Covered Property.

27. The Policy also provides coverage for "actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss." Dependent property is defined as "property owned, leased or operated by others whom you depend on to: (a) Deliver material or services to you . . . (b) Accept your products or services; (c) Manufacture your products for delivery . . . or (d) Attract customers to your business premises."

28. Members of the Class also purchased a policy from Defendant providing for the same business income loss, civil authority, and dependent property coverage, and using the same form policy provisions.

**In Response to Covid-19, State Governments, including California, Issued Sweeping Orders Shutting Down "Non-Essential" Businesses and Prohibiting Public Gatherings**

29. COVID-19 has spread, and continues to spread, rapidly across the United States and has been declared a public health emergency of international concern by the World Health Organization ("**WHO**").[1]

30. COVID-19 is highly contagious and can be spread exponentially in the community by persons who are symptomatic, asymptomatic or pre-symptomatic. In addition to transmission through airborne respiratory droplets, the COVID-19 virus can physically attach to and stay on surfaces of objects or materials for many days.

31. According to a study published in *The New England Journal of Medicine*, COVID-19 is widely accepted as a cause of real physical loss and damage. It remains stable and transmittable in aerosols for up to three hours, and on surfaces for up to four hours on copper, up to 24 hours on cardboard, and up to two to three days on plastic and stainless steel.[2]

32. Another study, published in the *Journal of Hospital Infection*, found: "Human coronaviruses can remain infectious on inanimate surfaces at room temperature for up to 9 days. At a temperature of 30°C or more the duration of persistence is shorter."[3]

33. In response to the COVID-19 pandemic, on March 4, 2020, California Governor, Gavin Newsom, declared a State of Emergency for California.[4]

34. On March 16, 2020, the Centers for Disease Control and Prevention ("**CDC**") issued national guidance to "slow the spread" of COVID-19, suggesting that people should avoid gatherings of 10 or more people.[5]

---

[1] *See* https://pubmed.ncbi.nlm.nih.gov/32191675/ (last accessed May 6, 2021).
[2] *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last accessed June 1, 2021).
[3] *See* https://www.inverse.com/science/coronavirus-4-studies-explain-how-covid-19-sticks-to-surfaces (last accessed June 1, 2021).
[4] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf (last accessed June 1, 2021).
[5] Coronavirus disease 2019 (COVID-19): recommendations regarding the use of cloth face coverings, especially in areas of significant community-based transmission. Atlanta, GA:

35. On March 19, 2020, Governor Newsom issued a statewide stay-at-home order,[6] which required "all individuals living in the State of California to stay at home or at their place of residence" unless they are essential.

36. Also on March 19, 2020, Health Officer of the County of Los Angeles, Muntu Davis, MD, MPH, issued a Safer At Home Order For Control Of Covid-19, closing all non-essential businesses.[7]

37. On May 7, 2020, Governor Newsom issued an order[8] permitting a gradual statewide movement from Stage 1 to Stage 2, which entails a slow reopening of the State of California on a county-by-county basis.[9]

38. On May 22, 2020, the County of Los Angeles Department of Public Health issued an order to "partially move the County of Los Angeles into Stage 2," and allowed the operation of low-risk businesses, but encouraged residents to continue to work remotely, continue to remain in their residence, and continue not to operate unless you are an essential or low-risk business.

39. On June 12, 2020, swimming pools were allowed to open in California, with pools in Los Angeles County having a capacity limit of 25% or 10 people, whichever is smaller.[10]

40. As of May 21, 2021, indoor pools had a capacity limit of 50%.[11]

---

US Department of Health and Human Services, CDC; 2020. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html

[6] See https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf (last accessed June 1, 2021).

[7] See http://file.lacounty.gov/SDSInter/lac/1070029_COVID-19_SaferAtHome_HealthOfficerOrder_20200319_Signed.pdf (last accessed June 3, 2021)

[8] See https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%205-7-2020.pdf (last accessed June 1, 2021).

[9] See https://www.gov.ca.gov/wp-content/uploads/2020/05/5.4.20-Update-on-Californias-Pandemic-Roadmap.pdf (last accessed June 1, 2021).

[10] See https://www.commlgl.com/pools-opening-throughout-southern-california-beginning-june-12/ (last accessed June 1, 2021).

[11] See http://publichealth.lacounty.gov/media/Coronavirus/docs/protocols/Reopening_ResidentialSwimmingPools.pdf (last accessed June 1, 2021).

41. The County of Los Angeles and State of California are continuing to operate under modified Stay at Home Orders, with plans on gradually reopening over time to minimize the spread of COVID-19.

42. Most other states, including those in which the putative Class members reside and/or do business, have issued similar compulsory shut-down orders for "non-essential" businesses, or businesses deemed not to be "life sustaining," and have otherwise prohibited gatherings of 10 or more people.

43. The closure of all non-life-sustaining businesses and prohibition of gatherings evidences an awareness on the part of both state and local governments that COVID-19 spreads easily and causes loss of or damage to property. This is particularly true in places where in-person business is conducted or large gatherings are inevitable, as the contact and interaction necessarily incident to such businesses causes a heightened risk of the property becoming contaminated.

44. For example, a New York City Executive Order entered on March 16, 2020 specifically acknowledged that: "[COVID-19] physically is causing property loss and damage."[12]

45. Similarly, in a March 16, 2020 proclamation, the City of New Orleans acknowledged COVID-19's "propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances."[13]

46. In upholding the Governor of Pennsylvania's Proclamation of a state-wide disaster and the Executive Orders mandating the closure of businesses within Pennsylvania, the Pennsylvania Supreme Court noted the significant risk of the spread of the COVID-19 virus, even in locations where the disease has not been detected:

> Covid-19 does not spread because the virus is "at" a particular location. Instead it spreads because of person-to-person contact, as it has an incubation

---

[12] See https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf (last accessed June 1, 2021).

[13] See https://nola.gov/mayor/executive-orders/emergency-declarations/03162020-mayoral-proclamation-to-promulgate-emergency-orders-during-the-state-of-emergency-due-to-co/ (last accessed June 1, 2021).

period of up to fourteen days and that one in four carriers of the virus are asymptomatic. Respondents' Brief at 4 (citing Coronavirus Disease 2019, "Symptoms," CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed 6/23/2020)). The virus can live on surfaces for up to fourteen days and can remain in the air within confined areas and structures. *Id.* (citing National Institutes of Health, "Study suggests new coronavirus may remain on surfaces for days," (Mar. 27, 2020) https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last accessed 4/9/2020) and Joshua Rabinowitz and Caroline Bartman, "These Coronavirus Exposures Might be the Most Dangerous," The New York Times (Apr. 1, 2020) https://www.nytimes.com/2020/04/01/opinion/coronavirus-viral-dose.html).

*Friends of DeVito v. Wolf*, 227 A.3d 872, 891 (Pa. 2020).

47. Because the COVID-19 virus can survive on surfaces for up to fourteen days, the Pennsylvania Supreme Court ultimately concluded that "any location . . . where two or more people can congregate is within the disaster area."

48. Further, the WHO has indicated that airborne transmission, "particularly in specific indoor locations, such as crowded and inadequately ventilated spaces" poses a significant risk.[14]

49. The CDC has warned that exposure to an individual with COVID-19 for fifteen minutes or more, or close contact within six feet of distance, is enough to justify a personal quarantine.[15]

**Plaintiff Submitted a Claim Under Its "All-Risk" Policy, and Defendant Wrongly Failed and Refused To Honor Its Obligations Respecting Same**

50. As a result of the orders, guidance and protocols issued by the Governor of California, the County of Los Angeles Department of Public Health, and the CDC (collectively the "**Mandated Shutdown Rules**"[16]), Plaintiff had to close its business on March 17, 2020, with only limited capacity after being allowed to reopen.

51. Plaintiff has incurred, and will continue to incur, among other things, a substantial loss of business income, including additional expenses covered under the Policy

---

[14] https://apnews.com/648feb226473f9841920abd6ffb004c7
[15] https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html
[16] Included in this definition when referring to the Class is all other State, County and Department of Health orders, guidance and protocols under which members of the Class operated.

due to the constraints placed on businesses and public places such as the Covered Property because of the Mandated Shutdown Rules.

52. Plaintiff provided timely notice to Defendants of its claim for the loss of business income due to COVID-19 and the Mandated Shutdown Rules.

53. On April 9, 2020, Defendant responded to Plaintiff indicating that they "have completed a review of your loss and have determined that since coronavirus did not cause property damage at your place of business or in the immediate area, this business income loss is not covered." Defendant's April 9, 2020 response is attached hereto as **Exhibit B**.

**Contrary To Defendant's Position, Plaintiff's Losses Arise From A Covered Cause of Loss**

54. Plaintiff suffered "direct physical loss of or physical damage to" its Covered Property due to the Mandated Shutdown Rules. The Mandated Shutdown Rules, in and of themselves, constitute a Covered Cause of Loss within the meaning of the Policy.

55. Alternatively, and to the extent the Mandated Shutdown Rules do not constitute a Covered Cause of Loss within the meaning of the Policy, the COVID-19 public health emergency and the ubiquitous nature of the COVID-19 virus caused a direct physical loss or physical damage to Plaintiff's Covered Property. Specifically, the Covered Property has been rendered unusable for its intended purpose because the highly contagious nature of COVID-19.

56. Further, and as an additional basis for coverage under the Policy, the ubiquitous nature of the COVID-19 virus caused direct physical loss or physical damage to property other than Plaintiff's Covered Property, and such loss or damage resulted in an "order by civil authority" prohibiting access to Plaintiff's Covered Property, within the meaning of the Policy.

57. Additionally, Plaintiff's "dependent property" suffered direct physical loss or physical damage as a result of the Mandatory Shutdown Rules, or in the alternative, the ubiquitous nature of the COVID-19 virus, resulting in lost business income to Plaintiff, within the meaning of the Policy.

# CLASS ACTION ALLEGATIONS

58. Plaintiff brings this action individually and as a class action on behalf of the Class, defined as follows:

> All policyholders in the United States who purchased commercial property coverage, including business income, extra expense and/or action of civil authority coverage from Defendants and who have been denied coverage under their policy for lost business income after being ordered by a governmental entity, in response to the COVID-19 pandemic, to shut down or otherwise curtail or limit in any way their business operations, or after having sustained a loss due to an action by civil authority.

59. Excluded from the Class is Defendant and their officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their staff.

60. The members of the Class are so numerous and geographically dispersed that joinder would be impracticable. Class members are readily identifiable from information and records in Defendant's possession, custody, or control.

61. There is a well-defined community of interest in the common questions of law and fact affecting the Class members. These common legal and factual questions include, but are not limited to:

    a.    whether Defendant owed coverage to Plaintiff and the Class;

    b.    whether any exclusions to coverage apply;

    c.    whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages; and

    d.    whether Plaintiff and members of the Class are entitled to equitable, declaratory and/or other relief, and if so, the nature of such relief.

62. Plaintiff's claims are typical of the claims of the absent Class members and have a common origin and basis. Plaintiff and absent Class members are all injured by Defendant's refusal to afford the purchased coverage. Plaintiff's claims arise from the same practices and course of conduct giving rise to the claims of the absent Class members and are based on the same legal theories, namely the refusal to provide insurance coverage for

the loss. If prosecuted individually, the claims of each Class member would necessarily rely upon the same material facts and legal theories and seek the same relief. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

63. Plaintiff will fully and adequately assert and protect the interests of the absent Class members and has retained Class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiff nor Plaintiff's attorneys have any interest contrary to or conflicting with the interests of absent Class members.

64. The questions of law and fact common to all Class members predominate over any questions affecting only individual class members.

65. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the absent Class members' claims is economically infeasible and procedurally impracticable. Class members share the same factual and legal issues and litigating the claims together will prevent varying, inconsistent, or contradictory judgments, and will prevent delay and expense to all parties and the court system through litigating multiple trials on the same legal and factual issues. Class treatment will also permit Class members to litigate their claims where it would otherwise be too expensive or inefficient to do so. Plaintiff knows of no difficulties in managing this action that would preclude its maintenance as a class action.

66. Additionally, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making declaratory relief appropriate to the Class as a whole.

# COUNT I

## DECLARATORY RELIEF

67. Plaintiff incorporates by reference Paragraphs 1 through 66 above as if fully set forth herein.

68. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

69. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties in that Plaintiff contends and Defendant disputes and denies that the Policy provides coverage to Plaintiff for any current and future lost business income, subject to the limit of liability, for the temporary suspension of Plaintiff's operations.

70. The Policy provides coverage for "direct physical loss of or physical damage to" the Covered Property. The Policy does not define "direct physical loss of or physical damage to."

71. Plaintiff's loss of use, loss of access, and loss of functionality of its Covered Properties when the Mandated Shutdown Rules made it unlawful for Plaintiff to fully access, use, and operate its business at the Covered Property, constitutes a "Covered Cause of Loss" under the Policy. Alternatively, the ubiquitous nature of the COVID-19 virus caused a "Covered Cause of Loss" to the Covered Property by preventing Plaintiff and the Class from using the Covered Property for its intended purpose.

72. Additionally, the Mandated Shutdown Rules or, alternatively, the ubiquitous nature of the COVID-19 virus, caused a "Covered Cause of Loss" to property other than the Covered Property, thereby invoking coverage under the Policy's "Civil Authority" provision for "actual loss of Business Income" sustained at the Covered Property.

73. Further, the Mandatory Shutdown Rules, or alternatively, the ubiquitous nature of the COVID-19 virus, caused physical loss or physical damage to Plaintiff's

"dependent property," thereby invoking coverage under the Policy's "Dependent Property" provision, which provides for the payment of lost Business Income when a Covered Cause of Loss damages "dependent property."

74. The Policy constitutes a valid and binding agreement obligating Defendant to indemnify Plaintiff for covered losses.

75. Plaintiff has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Policy and applicable law, or alternatively, Plaintiff has been excused from performance by Defendant's acts, representations, conduct, or omissions.

76. Defendant has failed to indemnify Plaintiff for its covered losses.

77. No exclusion to coverage applies.

78. Plaintiff has suffered and continues to suffer a covered loss under the Policy.

79. Plaintiff, individually and on behalf of the Class, seeks a Declaratory Judgment that there is coverage for its business interruption losses under the Policy.

## COUNT II

## BREACH OF CONTRACT

80. Plaintiff incorporates by reference Paragraphs 1 through 66 above as if fully set forth herein.

81. Plaintiff entered into a contract of insurance with Defendant; here, the Policy.

82. As an insurer, Defendant has a duty of good faith and fair dealing towards its insureds, including the obligation to pay for the financial losses suffered by the Plaintiff and members of the Class because of the Mandated Shutdown Rules.

83. Plaintiff and members of the Class had a reasonable expectation that the financial losses suffered because of the Mandated Shutdown Rules would be covered under the Policy.

84. The Class members entered into a substantially identical policy with Defendant.

85. Under the Policy, Defendant agreed to indemnify Plaintiff and the Class for their business losses as a result of a covered loss.

86. Plaintiff and the Class members suffered a covered loss under the Policy.

87. Plaintiff and the Class members timely submitted a notice of claim and satisfied all conditions precedent to receiving the coverage it purchased from Defendant.

88. Defendant breached its contract with Plaintiff and the Class members by failing and refusing to provide the contracted for coverage.

89. Defendant's breach of the contract has caused Plaintiff and the Class to suffer damages in the amount of their unreimbursed business losses or their limits of liability, whichever is lower.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff herein pray as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For damages in an amount to be determined by the trier of fact;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(f) Awarding pre- and post-judgment interest on any amounts awarded; and,

(g) Awarding such other and further relief as may be just and proper

## TRIAL BY JURY IS DEMANDED

A jury trial is demanded on all claims so triable.

Dated: October 18, 2021                **LYNCH CARPENTER, LLP**

By: */s/Todd D. Carpenter*
Todd D. Carpenter (234464)
todd@lcllp.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.: 619-762-1900
Fax: 619-756-6991

*Attorneys for Plaintiff*